## Schedule A

USA Patent Registration No. 5,971,423

German Patent Registration No. 196 42 887

Swiss Patent Registration No. 691 663

Austrian Patent Registration No. 409 457

Canadian Patent Application No. 2,188,084

05 1426

FILED

JUL 19 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**MARKS & CLERK**
*Intellectual Property*

麥仕奇知識產權

Chartered Patent Attorneys
European Patent Attorneys
Registered Trade Mark Attorneys
European Trade Mark Attorneys

Established 1887

Hong Kong Office
20/F Chinachem Hollywood Centre
1-13 Hollywood Road
Central Hong Kong

香港中環荷李活道一至十三號
華懋荷李活中心二十樓

Tel: +852 2526 6345
Fax: +852 2810 0791
Email: general@marksclerk.com
http:\\www.marks-clerk.com

**BY EMAIL & POST**

Christensen O'Connor Johnson Kindness
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
United States

**Attn: Jerald E. Nagae**

our reference    M3501

your reference   KCOS-5-23202

date             7 January 2005

Dear Mr. Nagae

**Re:  K2 Cinch Binding**
**Alleged infringement of US Patent 5,971,423**

We refer to your letter of 4 February 2005 to Anthony Scaturro.

We represent Neil Pryde Limited in patent matters and have been asked to respond to your letter.

Your letter of 4 February only denies that the Cinch binding has the following features of claim 1 of US Patent 5,971,423.

1) a diverter roller attached to the chassis of the binding
2) a tension element fixedly attached to the instep element and to the heel element and arranged to engage the diverter roller when the heel element and instep element are moved from the open position to the closed position.

It seems implicit that you accept that the Cinch binding has every other feature of the claim and so only these features are at issue.

In relation to Feature 1) you state:
a. The K2 Cinch binding does not have a diverter roller, or any component equivalent to a diverter roller;
b. The K2 Cinch binding does use cable guides, but they are not attached to the chassis;

In the context of the current invention a guide is undoubtedly the equivalent of a diverter roller. In relation to the guides you state "but they are not attached to the chassis". This infers an acknowledgement that cable guides are an equivalent of the diverter roller.

The roller/guides are not on the chassis, but our view is that the location on the heel element is equivalent as it performs substantially the same function in substantially the same way.

The Cinch binding has features equivalent to a diverter roller attached to the chassis of the binding.

In relation to Feature 2) you state:
c. The K2 Cinch binding does not have a tension element which is fixedly attached to the instep element and heel element and also that engages a diverter roller, or any structural equivalent to such a tensioning element;
d. The K2 Cinch binding does use cable guides, but the K2 cable does not engage the guides when the heel element and instep element are moved from the open position to the closed position.

We disagree. The tension element comprises the lever and cable attached between the instep and heel element for closing and securing the Cinch binding. The cable is fixedly attached to the instep element and the lever is attached to the heel element. It might be possible to close the heel element of the Cinch binding without engaging the cable on the diverter roller/guides, but it will not remain closed and this seems contrary to the use intended by K2. Clearly the Cinch binding is designed to be closed using the lever in which case the cable engages the diverter roller/guides.

The Cinch binding has Feature 2 mentioned above on a literal interpretation of the claim.

The question of infringement hinges on whether Feature 1, a diverter roller attached to the chassis, can be expanded under the Doctrine of Equivalents to include features of cable guides attached to the heel element. In our view it can.

The presumption of *Festo* can be rebutted where the rationale underlying a narrowing amendment bears no more than a tangential relationship to the equivalent in question (*Insituform Technologies, Inc., v. CAT Contracting, Inc.*, No. 99-1548, 00-1005, Fed Cir, October 4, 2004). The feature of a diverter roller attached to the chassis of the binding was added in a preliminary amendment before examination. This feature, a diverter roller attached to the chassis, was a feature of original Claim 9. There is no explanation as to the reason for the amendment moving the feature from Claim 9 to Claim 1. Although there is a presumption that the amendment was made for reasons of patentability, i.e. to distinguish Claim 1 from the prior art, no actual narrowing amendment was made with respect to the feature of a diverter roller attached to the chassis. The feature always existed in the claims as filed. Clearly in this case the amendment is not only tangential to the equivalent in question, it is irrelevant to that question.

In response to the first Office Action the attorney prosecuting the case argued that neither of the citations teach nor suggest a diverter roller attached to the chassis. There was no amendment of this feature in the response. This argument was only one of several forwarded as alternatives in an attempt to distinguish from the citations. Where several arguments are forwarded to distinguish a claim then every argument does not necessarily create an estoppel: the arguments must be viewed in context (*Read Corp. v. Portec, Inc.*, 970 F.2d 816, 824, 23 USPQ2d 1426, 1433 (Fed. Cir. 1992)). Some of the arguments forwarded by the attorney never referred to the diverter roller attached to the chassis. Any

MARKS & CLERK

-3-

of the arguments by themselves would have been sufficient to distinguish from the citations, and so there is a strong argument that estoppel does not attach to this feature.

We have obtained from a US Attorney an opinion stating that:

1) a US court would likely decide that the presumption of *Festo* created by the amendments filed in this case could be rebutted as to equivalents concerning the attachment of a diverter roller to the chassis, and

2) a US court would likely not hold that an estoppel was created by attorney arguments in the course of prosecution with regard to attachment of a diverter roller to the chassis.

In view of the above Neil Pryde Limited has reasonable grounds to assert that K2's Cinch binding infringes US Patent 5,971,423.

K2 has repeatedly stated that it is respectful of the intellectual property rights of others, but its actions do not support this position. This matter originated from a meeting at the winter ISPO in February 2004 requested by K2 to discuss possible infringement of Neil Pryde Limited/Flow patents in this area. Prior to entry in the market of the K2 Cinch binding Neil Pryde Limited was the exclusive manufacturer of snowboard bindings having a rearwardly pivoting heel element. K2 was sufficiently concerned about Neil Pryde Limited/Flow rights in this technology to request that meeting.

US Patent 5,971,423 was brought to the attention of K2 in July 2004. In October 2004 K2 advised us that they were conducting a review of the claims and file wrapper of the Patent. Despite repeated requests a substantive reply was not forthcoming until your letter of 4 February 2005. We were able to obtain the filing wrapper and provide an opinion on this Patent in just two weeks.

Neil Pryde Limited is trying to seek a commercial solution to this matter. As we have stated before, the sooner this matter can be resolved amicably the better for everyone.

We look forward to hearing from you.

Yours sincerely

Michael Flint
MARKS & CLERK

Email: mike.flint@marksclerk.com