UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K-2 CORPORATION, an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOODWELL INTERNATIONAL LIMITED, a Virgin Islands (Br.) Limited Company; and NEIL PRYDE LIMITED, a Hong Kong corporation,<br><br>Defendants. | Case No. 1:05CV01426 |
| GOODWELL INTERNATIONAL LIMITED, a Virgin Islands (Br.) Limited Company; and NEIL PRYDE LIMITED, a Hong Kong corporation,<br><br>Counter-claimants,<br><br>v.<br><br>K-2 CORPORATION, an Indiana corporation,<br><br>Counter-defendant. | |

**ANSWER AND COUNTERCLAIMS OF DEFENDANTS AND COUNTER-CLAIMANTS GOODWELL INTERNATIONAL LIMITED AND NEIL PRYDE LIMITED AND DEMAND FOR JURY TRIAL**

Defendants Goodwell International Limited ("Goodwell") and Neil Pryde Limited ("Neil Pryde," and collectively with Goodwell, "Defendants"), for their Answer to K-2 Corporation's ("K-2") Complaint For Declaratory Judgment of Non-Infringement of Patent ("Complaint"), state as follows:

## THE PARTIES

1. Defendants are without sufficient information and belief to admit or deny the averments of Paragraph 1 of the Complaint.

2. Defendants admit the averments of Paragraph 2 of the Complaint.

3. Defendants admit the averments of Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. Defendants admit the averments of Paragraph 4 of the Complaint.

5. Defendants admit the averments of Paragraph 5 of the Complaint.

6. Defendants admit the averments of Paragraph 6 of the Complaint.

7. Defendants admit the averments of Paragraph 7 of the Complaint.

## FACTUAL ALLEGATIONS

8. Defendants admit the averments of Paragraph 8 of the Complaint. The '423 patent is attached to the Complaint as Exhibit 1 not Exhibit A.

9. Defendants admit the averments of Paragraph 9 of the Complaint.

10. Defendants admit the averments of Paragraph 10 of the Complaint. The referenced July 20 letter is attached to the Complaint as Exhibit 2 not Exhibit B.

11. Defendants admit the averments of Paragraph 11 of the Complaint.

12. Defendants admit the averments of Paragraph 12 of the Complaint. The referenced September 2 letter is attached to the Complaint as Exhibit 3 not Exhibit C.

13. Defendants admit only the accuracy of the quotation recited in Paragraph 13 of the Complaint. Defendants deny the remaining averments of Paragraph 13. The referenced November 19 letter is attached to the Complaint as Exhibit 4 not Exhibit D.

14. Defendants admit the averments of Paragraph 14 of the Complaint. The referenced January 7 letter is attached to the Complaint as Exhibit 5 not Exhibit E.

15. Defendants admit only the accuracy of the quotation recited in Paragraph 15 of the Complaint and the final sentence of Paragraph 15 of the Complaint. Defendants deny the remaining averments of Paragraph 15. The referenced July 6 e-mail is attached to the Complaint as Exhibit 6 not Exhibit F. The referenced license agreement is attached to the Complaint as Exhibit 7 not Exhibit G.

16. Defendants admit the averments of Paragraph 16 of the Complaint.

17. Defendants deny the averments of Paragraph 17 of the Complaint. The content of the referenced communication is accurately reflected by the Exhibits to the Complaint.

18. Defendants deny the averments of Paragraph 18 of the Complaint. The content of the referenced communication is accurately reflected by the Exhibits to the Complaint.

19. Defendants deny the averments of Paragraph 19 of the Complaint. The content of the referenced communication is accurately reflected by the Exhibits to the Complaint.

20. Defendants deny the averments of Paragraph 20 of the Complaint. The content of the referenced communication is accurately reflected by the Exhibits to the Complaint.

21. The averment of Paragraph 21 does not state facts that can be admitted or denied. As such, Defendants deny the averments of Paragraph 21.

## COUNT I

22. Defendants restate their response to paragraphs 1-21 as if repeated here verbatim.

23. Defendants deny the averments of Paragraph 23.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray as follows:

A. That K-2's request for judgment that its CINCH binding does not infringe any claim of U.S. Patent No. 5,971,423 be denied;

  B. That K-2's request that it be awarded costs and attorneys fees in this action be denied; and

  C. That K-2's request for further relief be denied; and

  D. That Defendants be awarded their costs and attorneys fees in this action and that Defendants be awarded any further relief the Court deems appropriate.

## COUNTERCLAIMS

  1. Goodwell International Limited ("Goodwell") and Neil Pryde Limited ("Neil Pryde") assert the following counterclaims for infringement of United States Patent Nos. 5,971,423 patent ("the '423 Patent") and 5,918,897 patent ("the '897 Patent") against Counter-defendant Plaintiff K-2 Corporation ("K-2").

## INTRODUCTION

  2. In 1996, nearly a decade before K-2 introduced the accused CINCH binding, Goodwell and Neil Pryde, through Flow Sports, Inc. ("Flow") began selling a line of snowboard bindings incorporating many of the revolutionary patented features later copied by K-2's accused CINCH binding. Chief among these features was the Flow Reclining Highback.

  3. The high performance Flow Reclining Highback design makes the Flow bindings one of the easiest snowboard bindings on the market for users to get their boots into and out of. The snowboarder simply reclines the highback, slides his boots into the bindings, lifts the highback and rear lever and his boots are locked into position ready to ride. At the end of the run, the snowboarder just pushes the lever down and pulls the boots out of the bindings.

  4. On their introduction, the Flow Reclining Highback binding freed snowboarders of the problems associated with conventional snowboard bindings sold by companies like K-2. No longer was the snowboarder required to sit down in the snow, take his gloves off and with

numb fingers fumble with complicated and difficult buckle systems to get in or out of his bindings, nor was he any longer required to adjust his bindings before each and every run.

5. The Flow Reclining Highback bindings also freed snowboarders to choose from a wide variety of so-called soft boots. Thus, the Flow binding, in contrast to so-called step-in bindings that were compatible with only one brand of boot, allows the user to select a boot that offers the desired fit, style, and price point.

6. Both novices and professional riders recognized the advantages of the Flow bindings. The problem for K-2 and others was that once a user tried the Flow binding, they rarely returned to conventional bindings such as those sold by K2 and its sub-brands were selling at the time.

7. On information and belief, K-2 attempted to use its substantial influence in the snowboard market to discredit Flow's bindings and the clear advantages of the Flow Reclining Highback. Those efforts failed and the sales volume of reclining highback bindings has steadily increased to the detriment of conventional binding sales, including those of K2 and its sub brands.

8. In 2004, K-2 introduced the accused CINCH binding, which is K-2's first binding to use a reclining highback design and other patented features found in the Flow bindings, in an effort to recapture the market it had lost to Flow.

9. On information and belief, K-2 knew about Flow's Reclining Highback binding before it finished the development of the accused CINCH binding.

10. On information and belief, K-2 obtained one or more of Flow's Reclining Highback bindings before it finished the development of the accused CINCH binding.

11.     On information and belief, K-2 studied the features of Flow's Reclining Highback bindings before it finished the development of the accused CINCH binding.

12.     On information and belief, K-2 knew of Goodwell's '423 Patent during its development of the accused CINCH binding.

13.     On information and belief, K-2 knew of Goodwell's '897 Patent during its development of the accused CINCH binding.

14.     On information and belief, during the development of the accused CINCH binding, K-2 talked to one or more of its lawyers about Flow's Reclining Highback bindings.

15.     On information and belief, during the development of its CINCH binding, K-2 talked to one or more of its lawyers about the '423 Patent.

16.     On information and belief, during the development of its CINCH binding, K-2 talked to one or more of its lawyers about the '897 Patent.

17.     On information and belief, even though K-2 was aware of the '423 patent, it went forward with the development of the accused CINCH binding.

18.     On information and belief, even though K-2 was aware of the '897 patent, it went forward with the development of the accused CINCH binding.

19.     On information and belief, even though K-2 was aware of the '423 patent, it went forward with the decision to sell the accused CINCH binding.

20.     On information and belief, even though K-2 was aware of the '897 patent, it went forward with the decision to sell the accused CINCH binding.

21.     K-2's line of accused CINCH bindings competes in the marketplace with Flow's line of Reclining Highback bindings.

22.     Before filing its lawsuit against Flow, K-2 did not notify anyone at Flow that it would sue.

## PARTIES

23.     Goodwell is a limited liability company organized and existing under the laws of the British Virgin Islands, and having a place of business at Columbus Center Building, Road Town, Tortola, Virgin Islands.

24.     Neil Pryde is a corporation organized and existing under the laws of Hong Kong, and having a place of business at 20/F YKK Building-Phase 2, 2 San Lik Street, Tuen Mun, Hong Kong.

25.     Upon information and belief, K-2 Corporation is a corporation organized under the laws of the State of Indiana and having a place of business at 19215 Vashon Highway SW, Vashon, Washington 98070.

## JURISDICTION

26.     This action arises under the Patent Act of he United States, 35 U.S.C. § 101 et seq. including but not limited to Sections 271, 281-285, and 291. This Court, therefore, has jurisdiction under 28 U.S.C. § 1331 and § 1338(a).

## VENUE

27.     Venue is proper in this district under 28 U.S.C. § 1391(b) and § 1400(b), and because Plaintiff K-2 brought the related declaratory judgment action in this forum pursuant to 35 U.S.C. § 293.

### Claim 1:  Infringement of United States Patent No. 5,971,423

28.     Goodwell and Neil Pryde incorporate by reference the allegations contained in paragraphs 1 through 27, above as if repeated verbatim.

29. On October 26, 1999, the '423 Patent for an invention entitled "BINDING FOR ATHLETIC GEAR" was issued to Reinhard Hansen, Werner Jettmar, and Leon Widdison, as co-inventors. The '423 Patent indicates on its face that it is assigned to Goodwell International Limited, and the assignment records of the United States Patent and Trademark Office are consistent. A true and correct copy of the '423 Patent was attached to the underlying Complaint of K-2 Corporation as Exhibit 1.

30. K-2 in violation of 35 U.S.C. § 271, has infringed and continues to infringe one or more claims of the '423 Patent by making, using, offering for sale, selling, and/or importing snow board bindings, including bindings sold under the tradename "CINCH," embodying the patented invention in/into the United States, and will continue to do so unless enjoined by this Court.

31. The accused "CINCH" binding is sold and intended for use in binding athletic gear, and specifically a snowboard boot, to a snowboard.

32. The accused "CINCH" binding includes a chassis.

33. The accused "CINCH" binding includes a retaining device for retaining a snowboard boot.

34. The accused "CINCH" binding has a heel portion that can pivot between an open position and a closed position about a pivot joint.

35. The accused "CINCH" binding has an instep portion that can pivot between a closed position and an open position about a pivot joint different from the pivot joint of paragraph 13.

36. The instep portion of the accused "CINCH" binding has a front end that can be positioned near the toe end of the snowboard boot.

37. The instep portion of the accused "CINCH" binding has a rear end that can be positioned near the instep of the snowboard boot.

38. The heel portion and the instep portion of the accused "CINCH" binding, when in an open position, form between them an opening through which a snowboard boot can be inserted.

39. The heel portion and the instep portion of the accused "CINCH" binding, when in a closed position, hold the snowboard boot.

40. The accused "CINCH" binding includes a coupling device that connects the heel portion and the instep portion of the binding so that they pivot against each other.

41. The coupling device of the accused "CINCH" binding includes a diverter roller.

42. The diverter roller of the accused "CINCH" binding is attached to the chassis of the accused "CINCH" bindings.

43. The coupling device of the accused "CINCH" binding includes a cable attached to its instep portion and heel portion.

44. The cable of paragraph 22 is positioned so that it can engage the diverter roller when the heel portion and instep portion of the accused "CINCH" bindings are moved from an open to a closed position.

45. On information and belief, K-2's infringement of the '423 Patent has been, and continues to be, willful and deliberate.

46. As a result of K-2's infringement of the '423 Patent, Goodwell and Neil Pryde have suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless K-2's infringing activities are enjoined by this Court.

47.     Unless a preliminary and permanent injunction is issued enjoining K-2 and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '423 Patent, Goodwell and Neil Pryde will be greatly and irreparably harmed.

### Claim 2:  Infringement of United States Patent No. 5,918,897

48.     Goodwell and Neil Pryde incorporate by reference the allegations contained in paragraphs 1 through 27, above as if repeated verbatim.

49.     On July 6, 1999, the '897 Patent for an invention entitled "SNOWBOARD BINDING" was issued to Reinhard Hansen and Werner Jettmar as co-inventors.  The '897 Patent indicates on its face that it is assigned to Goodwell International Limited, and the assignment records of the United States Patent and Trademark Office are consistent therewith.  A true and correct copy of the '897 Patent is attached to this answer and counterclaim as Exhibit A.

50.     K-2 in violation of 35 U.S.C. § 271, has infringed and continues to infringe one or more claims of the '897 Patent by making, using, offering for sale, selling, and/or importing snow board bindings, including bindings sold under the tradename "CINCH" embodying the patented invention in/into the United States, and will continue to do so unless enjoined by this Court.

51.     The accused "CINCH" binding is a snowboard binding for binding a snowboard boot to a snowboard's upper surface.

52.     The accused "CINCH" binding includes a base portion that can be fastened to a snowboard's upper surface.

53.     The accused "CINCH" binding includes an instep portion.

54.     The instep portion of the accused "CINCH" binding is fastened onto the base portion of the binding.

55. The instep portion of the accused "CINCH" binding can grip partially over the snowboard boot when the snowboard boot is inserted into the binding.

56. The accused "CINCH" binding includes a heel element which supports the snowboard boot's rear side.

57. The heel element of the accused "CINCH" binding is pivotable rearwardly on the base element into an entry position.

58. The heel element of the accused "CINCH" binding is pivotable rearwardly on the base element into an entry position in which the heel element lies generally parallel to the snowboard surface.

59. The heel element of the accused "CINCH" binding is pivotable rearwardly on the base element into an entry position in which the snowboard boot is insertable into the binding.

60. The accused "CINCH" binding includes an actuation device that pivots and holds the heel element forwardly into a closure position,

61. When in the closure position of paragraph 39, the heel element of the accused "CINCH" binding supports the snowboard boot and presses it against the instep element.

62. The actuation device of the accused "CINCH" binding has a first strap that is attached at both sides to a front area of the base element.

63. The actuation device of the accused "CINCH" binding has a first strap that wraps around the heel element on the heel element's outside.

64. On information and belief, K-2's infringement of the '897 Patent has been, and continues to be, willful and deliberate.

65.     As a result of K-2's infringement of the '897 Patent, Goodwell and Neil Pryde have suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless K-2's infringing activities are enjoined by this Court.

66.     Unless a preliminary and permanent injunction is issued enjoining K-2 and its agents, servants, employees, attorneys, representatives, and all others acting on their behalf from infringing the '897 Patent, Goodwell and Neil Pryde will be greatly and irreparably harmed.

**Prayer for Relief**

WHEREFORE, Goodwell International Limited and Neil Pryde Limited pray for judgment against K-2 Corporation as follows:

As to Claim 1:

A.      For judgment that K-2 Corporation has directly infringed the '423 Patent

B.      For judgment that K-2 Corporation has indirectly infringed the '423 Patent;

C.      For judgment that K-2 Corporation's infringement of the '423 Patent is, and has been, willful and deliberate;

D.      For an award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Goodwell and Neil Pryde for K-2 Corporation's infringement of the '423 Patent, but no less than a reasonable royalty, with interest, including pre-judgment and post-judgment interest, and a trebling of such damages in view of the willful and deliberate nature of the infringement;

E.      For an award of Goodwell and Neil Pryde's costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285;

F.      For a judgment that K-2 Corporation, its officers, agents, servants, employees, licensees, attorneys, related entities, and those in active concert or participation with them, be

preliminarily and permanently enjoined from further direct or indirect infringement of the '423 Patent;

      G.      That Goodwell and Neil Pryde recover such other and further relief as this Court may deem appropriate.

As to Claim 2:

      H.      For judgment that K-2 Corporation has directly infringed the '897 Patent

      I.      For judgment that K-2 Corporation has indirectly infringed the '897 Patent;

      J.      For judgment that K-2 Corporation's infringement of the '897 Patent is, and has been, willful and deliberate;

      K.      For an award of damages pursuant to 35 U.S.C. § 284 adequate to compensate Goodwell and Neil Pryde for K-2 Corporation's infringement of the '897 Patent, but no less than a reasonable royalty, with interest, including pre-judgment and post-judgment interest, and a trebling of such damages in view of the willful and deliberate nature of the infringement;

      L.      For an award of Goodwell and Neil Pryde's costs, expenses and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285;

      M.      For a judgment that K-2 Corporation, its officers, agents, servants, employees, licensees, attorneys, related entities, and those in active concert or participation with them, be preliminarily and permanently enjoined from further direct or indirect infringement of the '897 Patent;

      N.      That Goodwell and Neil Pryde recover such other and further relief as this Court may deem appropriate.

| | |
|---|---|
| Dated:  January 10, 2006 | FISH & RICHARDSON P.C.<br><br>By:   /s/ Linda L. Kordziel           <br>     Linda L. Kordziel (D.C. Bar # 446386)<br>1425 K Street, N.W., 11th floor<br>Washington, D.C.  20005<br>Telephone:  202-783-5070<br>Facsimile:   202-783-2331<br>Email:  kordziel@fr.com<br><br>John E. Gartman (*pro hac vice* application pending)<br>Todd G. Miller (*pro hac vice* application pending)<br>Fish & Richardson P.C.<br>12390 El Camino Real<br>San Diego, CA 92130<br>Telephone:   858-678-5070<br>Facsimile:  858-678-5099<br>Email:  gartman@fr.com<br>Email:  miller@fr.com<br><br>Attorneys for Defendants/Counter-claimants<br>Goodwell International Limited; Neil Pryde Limited |

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Goodwell International Limited and Neil Pryde Limited hereby request a trial by jury of all issues so triable.

Dated: January 10, 2006

FISH & RICHARDSON P.C.

By: ___/s/ Linda L. Kordziel_____
    Linda L. Kordziel (D.C. Bar # 446386)
1425 K Street, N.W., 11th floor
Washington, D.C. 20005
Telephone: 202-783-5070
Facsimile: 202-783-2331
Email: kordziel@fr.com

John E. Gartman (*pro hac vice* application pending)
Todd G. Miller (*pro hac vice* application pending)
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099
Email: gartman@fr.com
Email: miller@fr.com

Attorneys for Defendants/Counter-claimants
Goodwell International Limited; Neil Pryde Limited

10587173.doc